# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

THE TRAVELERS INDEMNITY
COMPANY,

    Plaintiff,

v.

BRITTANY M. JOHNSON,

    Defendant.

_____

BRITTANY M. JOHNSON,

    Counter-Claimant,

v.

THE TRAVELERS INDEMNITY
COMPANY,

    Counter-Defendant.

CAUSE NO.: 4:17-CV-86-TLS-JEM

## OPINION AND ORDER

This matter is before the Court on Travelers' Motion to Dismiss Count II and to Strike Portions of Counts I and III [ECF No. 24], filed on January 18, 2018. In relevant part, Travelers argues that an insurance provider, under Indiana law, does not breach the obligation of good faith and fair dealing that it owes to its insured when it merely acts negligently. The Court agrees with this argument. As such, for the reasons stated below, Travelers' Motion to Dismiss is GRANTED.

## BACKGROUND

On April 27, 2008, Brittany M. Johnson was injured in a vehicular collision involving a semi-truck. *See* Def.'s Countercl., p. 10, ECF No. 19. Kimiel Horn was the operator of the truck,

and he was employed by Sandberg Trucking, Inc. *Id.* at 9. Both Horn and Sandberg Trucking were insured by the Travelers Indemnity Company (Travelers). *Id.* As a result of the collision, Johnson suffered serious injuries such as severe traumatic brain injury, multiple skull fractures, multiple fractured ribs, scarring across her forehead, and deafness in her left ear. *Id.* at 11. John Pinckney, an expert with significant experience in truck safety, later issued an affidavit in which he concluded that Horn's actions caused or substantially contributed to the crash. *Id.* at 12. Various doctors also prepared written reports which detailed the serious injuries that Johnson suffered. *Id.*

Following the crash, Johnson sued both Horn and Sandberg Trucking in state court. *Id.* Upon filing suit, Travelers took exclusive possession and control of the defense and all settlement negotiations. *Id.* On numerous occasions during the state court litigation, Johnson requested that Travelers pay its $1,000,000 policy limit in exchange for Horn's full release from liability. *Id.* at 13. In every instance, Travelers rejected Johnson's demand and exposed its insured, Horn, to an excess verdict. *Id.* Throughout the negotiation process, Travelers responded with offers ranging from $75,000 to $150,000—all of which were rejected by Johnson. *Id.* at 14. Ultimately, the case proceeded to trial in February 2016, and a jury returned a $7,100,000 verdict in favor of Johnson. *Id.* at 15. Horn was responsible for $2,130,000 of the verdict. *Id.* On October 13, 2017, Horn assigned to Johnson his right to sue Travelers. *Id.* at 16.

On November 2, 2017, Travelers filed a Complaint for Declaratory Judgement [ECF No. 1] against Johnson in this Court, alleging that it should be relieved of any future responsibility because it had paid Johnson the full amount of the insurance policy and statutory interest. Compl. for Declaratory J. ¶ 21. On December 21, 2017, Johnson filed an Answer and Counterclaim [ECF No. 19]. Johnson responded that Travelers' request for declaratory judgment

should be denied and brought counterclaims alleging declaratory judgment (Count I), negligent failure to settle (Count II), bad faith failure to settle (Count III), and breach of contract (Count IV). Answer and Countercl. at 9–18.

On January 18, 2018, Travelers filed the instant Motion to Dismiss in relation to the Counterclaim, seeking to dismiss Count II in its entirety and to dismiss Counts I and III to the extent that Counts I and III are based upon negligence. Travelers does not seek to dismiss Count IV of the Counterclaim. This Motion is fully briefed and ripe for ruling.

## LEGAL STANDARD

"A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). "To survive a motion to dismiss under Rule 12(b)(6), the [counterclaim] must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta v. Jos. A. Banks Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and accepts as true all reasonable inferences that may be drawn from the allegations. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "While a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [counterclaimant's] obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bonnstetter*, 811 F.3d at 973 (quoting *Twombly*, 550 U.S. at 555).

# ANALYSIS

Travelers argues that, under Indiana law, an insurance provider does not breach the obligation of good faith and fair dealing that it owes to its insured when it merely acts negligently. In support of this argument, Travelers relies on *Erie Insurance Co. v. Hickman by Smith*, 622 N.E.2d 515, 517 (Ind. 1993) and the body of caselaw arising from it. In contrast, relying upon *Anderson v. St. Paul Mercury Indemnity Co.*, 340 F.2d 406, 407 (7th Cir. 1965), Johnson argues that an insurance provider breaches the obligation of good faith and fair dealing that it owes to its insured when it either acts negligently or in bad faith.[1] For the reasons stated below, the Court concludes as a matter of Indiana law that an insurance provider does not breach the obligation of good faith and fair dealing that it owes to its insured when it merely acts negligently. As such, Travelers' Motion to Dismiss is granted.

## A.  Controlling Law in Diversity Cases

When resolution of an issue depends upon state law, courts must apply the law that would be applied by the state supreme court. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 773 (7th Cir. 2002). When an issue of state law has not been addressed by the state supreme court, a federal court sitting in diversity must deduce, as closely as possible, how the state supreme court would rule. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 720 (7th Cir. 2004) (citing *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636–37 (7th Cir. 2002)). "If the state supreme court has not spoken on a particular issue, then decisions of the intermediate appellate court will control 'unless there are persuasive indications that the state supreme court would decide the issue differently.'" *BMD Contractors, Inc. v. Fid. and Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012) (quoting

---

[1] The Court notes that Johnson does not argue that portions of Count II state a claim based upon bad faith. Accordingly, any potential argument on this issue is waived. Moreover, because Travelers does not challenge Count IV, the Court does not address the applicable standard for breach of contract claims.

*Research Sys. Corp. v. IPSOS Publicité*, 276 F.3d 914, 925 (7th Cir. 2002)); *see also S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 674 (7th Cir. 2002). Finally, if there are no directly applicable decisions, then a court may consult relevant state precedents, analogous decisions, considered dicta, academic works, and any other reliable source that would indicate how the state supreme court would rule. *BMD Contractors*, 679 F.3d at 648. However, when the United States Court of Appeals for the Seventh Circuit has addressed an issue of state law, a district court is bound by the following framework:

> In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree. A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications. They could in principle persuade us to reconsider and overrule our precedent; assuredly they do not themselves liberate district judges from the force of our decisions.

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (internal citations omitted).

**B.     History of the Duty of an Insurer to Deal with its Insured in Good Faith**

Turning to Indiana law, this Court's analysis begins with *Flint & Walling Manufacturing Co. v. Beckett*, 79 N.E. 503, 504 (Ind. 1906), in which the owner of a barn brought an "action to recover damages for an injury to his barn and the contents thereof, owing to the fact that [defendant] constructed a windmill thereon in such an insufficient manner that it fell." The complaint was based upon a theory of negligence. *See id.* at 504–05. On appeal, the defendant argued that the plaintiff's cause of action "could only be enforced by an action on the contract

5

for a breach thereof." *Id.* at 505. The Indiana Supreme Court disagreed, concluding that the plaintiff's cause of action could arise both under a theory of contract law or tort law. *Id.*

In *Anderson*, in 1965, the Seventh Circuit Court of Appeals relied on the holding in *Flint & Walling Manufacturing Co.* In *Anderson*, Leon Allison sued James T. Goldsberry for personal injuries arising from a vehicle collision. 340 F.2d at 407. The jury awarded damages in the amount of $75,000. *Id.* Goldsberry was insured by St. Paul Mercury Insurance Company, which paid the policy limit of $15,000. *Id.* Goldsberry was unable to pay the remaining judgment, and he filed for bankruptcy. *Id.* The bankruptcy trustee sued the insurance company for its failure to settle Allison's claims within the policy limits. *Id.* Specifically, the trustee alleged that the company failed to settle within the policy limits of the insurance contract negligently, in bad faith, and with willfulness or gross negligence. *Id.* A jury found for the trustee on the claim of negligence, but rejected the other claims. On appeal, the Seventh Circuit dealt with the following issue:

> [U]nder Indiana law what standard of conduct is required of a liability insurer in its defense of a claim against its assured? To hold an insurer liable beyond policy limits is it sufficient to prove mere negligent conduct in defending the claim or, is it required that the insurer be proved guilty of bad faith or fraud?

*Id.* at 408. In resolving this issue, the court relied upon *Flint & Walling Manufacturing Co.* and reasoned as follows:

> [A]lthough admittedly not directly on point, the Trustee cites and relies on Flint and Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 12 L.R.A.N.S., 924, a 1906 Supreme Court of Indiana case. Distinguishable in that no specific mention is made of the liability insurer-insured situation, the court did, however, clearly enunciate and approve the more generic legal proposition that suit in tort may be brought for the negligent performance of a duty, notwithstanding that the duty in part results from a contract.
>
> This general expression by the Indiana Supreme Court in Flint & Walling Mfg. Co., buttressed by the absence of any decision even suggesting the possibility of a contrary view, convinces us that . . . Indiana . . . is a negligence as well as a bad faith state and not just a bad faith state.

*Id.*

Subsequently, the rationale of *Anderson* has been cited with approval. In 1972, the Indiana Court of Appeals relied upon *Anderson*'s holding for the proposition that "a suit in tort could be brought for the negligent performance by the insurer of the duty to use due care in settlement of a claim." *Bennett v. Slater*, 289 N.E.2d 144, 146 (Ind. Ct. App. 1972) (citing *Anderson*, 340 F.2d at 406). As recently as 1990, the Seventh Circuit relied upon *Anderson* for the statement that, "[u]nder Indiana law, an insurer is liable to its insured for a judgment exceeding policy limits when the insurer, who has exclusive control of defending and settling the suit, refuses, in negligence or bad faith, to settle within policy limits." *Certain Underwriters of Lloyd's and Cos. Subscribing to Excess Aviation Liab. Ins. Policy No. FL-10959 A & B v. Gen. Accident Ins. Co. of Am.*, 909 F.2d 228, 231 (7th Cir. 1990) (citing *Bennett*, 289 N.E.2d at 146; *Anderson*, 340 F.2d at 408). However, in 1993, the underlying foundation of *Anderson* was undercut by the Indiana Supreme Court's decision of *Hickman* and the body of caselaw arising from it.

In *Hickman*, the insureds filed a lawsuit against the Erie Insurance Company for breach of contract. 622 N.E.2d at 517. The jury found for the insureds and awarded both compensatory and punitive damages. *Id.* The insurance company appealed, arguing that there was insufficient evidence to support the imposition of punitive damages. *Id.* at 517, 520. The Indiana Supreme Court granted transfer to "reaffirm the existence of a duty that an insurer deal in good faith with its insured, and to recognize a cause of action in tort for the breach of that duty." *Hickman*, 622 N.E.2d at 517. Although the court did not determine the precise extent of an insurer's duty to deal in good faith, it observed that the duty of an insurer includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in

7

making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* at 519. However, the Indiana Supreme Court limited the scope of this new tort claim as follows:

> We also note that this new cause of action does not arise every time an insurance claim is erroneously denied. For example, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. This is so even if it is ultimately determined that the insurer breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana. . . . Similarly, the lack of diligent investigation alone is not sufficient to support an award. On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty.

*Id.* at 520 (internal citations omitted).

The rationale of *Hickman* has been reaffirmed in several cases from the Indiana Supreme Court. In *Freidline v. Shelby Insurance Co.*, 774 N.E.2d 37, 38–40 (Ind. 2002), the plaintiffs sued the owner of a building because they were sickened by toxic fumes. The owners of the building notified their insurance provider, but the insurance provider refused to defend or indemnify the building owners. *Id.* at 39. The building owners filed a third-party complaint against their insurance provider seeking to enforce their rights under the insurance policy. *Id.* The building owners also alleged that the denial of coverage was done in bad faith. *Id.* At the summary judgment stage, the trial court concluded that (1) the plaintiffs' claims were excluded from coverage due to the pollution exclusion in the insurance policy and (2) the insurance company did not act in bad faith. *Id.* The Indiana Court of Appeals reversed. *Id.* On appeal, the Indiana Supreme Court agreed that the insurance company was required to defend and indemnify the building owners, but it affirmed the trial court's grant of summary judgment as to bad faith. *Id.* at 40–43. Regarding bad faith, the Indiana Supreme Court recognized the holding in *Hickman* that an insurer has a legal duty to deal in good faith with its insured. *Id.* at 40 (citing *Hickman*,

622 N.E.2d at 518). The court elaborated that "an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability."[2] *Id.* (citation omitted). Turning to the merits, the court reasoned that the pollution exclusion provided "a rational, principled basis for denying liability." *Id.* at 42. Based upon this, the court concluded as follows:

> Inasmuch as we find there is a rational basis for [the insurance company's] actions, and [the insurance company] supports its position with good faith legal argument, the [building owners] have failed to establish by clear and convincing evidence that [the insurance company] breached its duty to act in good faith. Thus, the trial court correctly entered summary judgment in favor of [the insurance company] on this issue.

*Id.* at 42–43.

In *Monroe Guaranty Insurance Co. v. Magwerks Corp.*, 829 N.E.2d 968 (Ind. 2005), the Indiana Supreme Court again relied on the holding in *Hickman*. In *Magwerks*, the roof of a building suffered significant damage. *Id.* at 971. The owner of the building submitted a claim to its insurance provider, but the insurance provider denied coverage after citing to several conflicting policy exclusions. *Id.* The owner of the building sued its insurance provider for breach of contract and lack of good faith and fair dealing. *Id.* At the summary judgment stage, the trial court concluded that the policy exclusions did not apply, and the case proceeded to a jury trial on the issue of contract damages and on the claim for breach of good faith and fair dealing. *Id.* Ultimately, the jury awarded the building owner $1,100,000 in contract damages and $4,000,000 in punitive damages. *Id.*

---

[2] Further, this quote from *Freidline* has recently been cited with approval by the Indiana Supreme Court. *See Wellpoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 29 N.E.3d 716, 727 (Ind. 2015); *Inman v. State Farm Mut. Auto Ins. Co.*, 981 N.E.2d 1202, 1207 (Ind. 2012).

9

On transfer to the Indiana Supreme Court, the insurance provider argued, among other things, that the award of punitive damages was not supported by the facts. *Id.* at 975. The insured argued "that the duty to deal in good faith includes also the 'manner of handling the claim.'" *Id.* at 976. The court rejected the insured's argument and explicitly declined "to expand on the extent of the duty an insurer owes its injured [*sic*] beyond those we have already expressed in *Hickman*." *Id.* at 976. However, the court reframed the insured's argument as whether the insurance provider's "conduct leading up to and including the issuance of the denial letter rose to the level of bad faith. . . . If so, then a jury could reasonably have reached the conclusion that [the insurance provider's] conduct amounted to 'an unfounded refusal to pay policy proceeds.'" *Id.* (citing *Hickman*, 622 N.E.2d at 519). Based upon the record in the case, the court affirmed the jury's award of punitive damages. *Id.* at 976–77.

Following *Hickman*, the Indiana Court of Appeals has explicitly concluded that mere negligence is not sufficient to constitute a breach of an insurance company's duty to deal in good faith with its insured. *See Pearman v. Stewart Title Guar. Co.*, 108 N.E.3d 342, 348 (Ind. Ct. App. 2018) ("Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. Thus, [a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." (quoting *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 302 (Ind. Ct. App. 2015))); *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008) ("Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present." (quoting *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 714 (Ind. Ct. App. 2007))); *State Farm Mut. Auto. Ins. Co. v. Noble*, 854 N.E.2d 925, 933 (Ind. Ct. App. 2006) ("Bad faith 'amounts to more than bad judgment or negligence. Bad faith involves the conscious doing of wrong because

of dishonest purpose or moral obliquity. It contemplates a state of mind operating with furtive design or ill will.'" (quoting *Johnston v. State Farm Mut. Auto. Ins. Co.*, 667 N.E.2d 802, 805 (Ind. Ct. App. 1996))); *see also Missig v. State Farm Fire & Cas. Co.*, 998 N.E.2d 216, 229 (Ind. Ct. App. 2013) ("To prove bad faith, the plaintiff must establish by clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability.").

C. **No Claim for Negligent Failure to Settle a Claim Under Indiana Tort Law**

Under Indiana law, an insurance provider does not breach the obligation of good faith and fair dealing that it owes to its insured when it merely acts negligently. *See Hickman*, 622 N.E.2d at 519–520; *Freidline*, 774 N.E.2d at 40. As such, there is no cause of action in tort for negligently failing to settle a claim within the policy limits of an insurance contract. In *Hickman*, the Indiana Supreme Court recognized "a cause of action in tort" for the breach of an insurer's duty of good faith and fair dealing that it owes to its insured. *Hickman*, 622 N.E.2d at 517. The *Hickman* court declined to determine the precise extent of an insurer's duty of good faith, but, as noted above, it observed that the duty of an insurer includes "the obligation to refrain from (1) making an *unfounded refusal* to pay policy proceeds; (2) causing an *unfounded delay* in making payment; (3) *deceiving* the insured; and (4) exercising any *unfair advantage* to pressure an insured into a settlement of his claim." *Id.* at 519 (emphasis added). The Indiana Supreme Court *did not* conclude that an insurer breaches the duty that it owes to its insured when it merely fails to act as a reasonable person would under the circumstances. *See id.* Moreover, the Indiana Supreme Court limited this new tort as follows:

> We also note that *this new cause of action does not arise every time an insurance claim is erroneously denied*. For example, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. *This is so even if*

11

> *it is ultimately determined that the insurer breached its contract.* . . . Similarly, the lack of diligent investigation alone is not sufficient to support an award. On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty.

*Id.* at 520 (citations omitted and emphasis added). Furthermore, as mentioned above, the Indiana Supreme Court has declined "to expand on the extent of the duty an insurer owes its injured [*sic*] beyond those we have already expressed in *Hickman*." *Magwerks Corp.*, 829 N.E.2d at 976.

Moreover, within the context of an insurer's duty to deal in good faith with its insured, the Indiana Supreme Court has framed the issue as whether an insurer's conduct amounted to bad faith, not mere negligence. *See Freidline*, 774 N.E.2d at 40 ("[A]n insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. To prove bad faith, the plaintiff *must establish* . . . that the insurer had knowledge that there was no legitimate basis for denying liability." (citation omitted and emphasis added)); *Magwerks Corp.*, 829 N.E.2d at 977 (framing the issue as whether the insurance provider's "conduct leading up to and including the issuance of the denial letter rose to the level of bad faith" and, "[i]f so, then a jury could reasonably have reached the conclusion that [the insurance provider's] conduct amounted to 'an unfounded refusal to pay policy proceeds'" (quoting *Hickman*, 622 N.E.2d at 519)); *see also Inman*, 981 N.E.2d at 1207 ("There is little question that it is difficult for the insured plaintiff to prove bad faith. It is a fact-intensive inquiry providing little certainty as to a plaintiff's probability of success.").

Therefore, based upon these decisions of the Indiana Supreme Court, the Court concludes that there is no cause of action in tort for negligently failing to settle a claim within the policy limits of an insurance contract.

## D. Pre-*Hickman* Seventh Circuit Caselaw

Based on the Indiana Supreme Court's analysis in *Hickman* and its progeny, the Seventh Circuit's reasoning in *Anderson* and *Certain Underwriters* is no longer authoritative. While *Anderson* and *Certain Underwriters* are procedurally on point with the instant case, they were decided prior to the Indiana Supreme Court's decision in *Hickman* and the body of case law which has arisen from it. More importantly, the Indiana Supreme Court's reasoning in *Hickman* and its progeny contradicts the Seventh Circuit's analysis in *Anderson* and *Certain Underwriters*. *Compare Hickman*, 622 N.E.2d at 519–20 ("We also note that this new cause of action does not arise every time an insurance claim is erroneously denied."), *Freidline*, 774 N.E.2d at 39–40 (concluding that "an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty" and that "to prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability"), *and Magwerks Corp.*, 829 N.E.2d at 977 (noting that "the question is whether [the insurance provider's] conduct leading up to and including the issuance of the denial letter rose to the level of bad faith"), *with Anderson*, 340 F.2d at 409 ("Indiana . . . is a negligence as well as a bad faith state and not just a bad faith state."), *and Certain Underwriters*, 909 F.2d at 231 ("Under Indiana law, an insurer is liable to its insured for a judgment exceeding policy limits when the insurer . . . refuses, in negligence or bad faith, to settle within policy limits.").

Finally, the *Anderson* court was deciding a novel issue of Indiana law without the benefit of a directly applicable decision from the Indiana Supreme Court. *See Anderson*, 340 F.2d at 408–09. In the absence of such direct authority, the Seventh Circuit relied upon *Flint & Walling Manufacturing Co.*, which was a 1906 case where the Indiana Supreme Court held that tort

13

liability could be alleged for the negligent construction of a windmill when the common-law obligation arose out of a contract. *See Flint & Walling Mfg. Co.*, 79 N.E. at 505. Certainly, the doctrine espoused in *Flint & Walling Manufacturing Co.* remains good law within the context of a contract for labor. *See, e.g.*, *Benge v. Miller*, 855 N.E.2d 716, 719 (Ind. Ct. App. 2006); *Homer v Burman*, 743 N.E.2d 1144, 1147 (Ind. Ct. App. 2001). However, unlike the Seventh Circuit in *Anderson*, the Indiana Supreme Court in *Hickman* did not use the analogy of undertaking a project in a "workmanlike manner" to describe the relationship between an insurer and its insured. *See Hickman*, 622 N.E.2d at 518–19. Instead, the *Hickman* court established tort liability within the insurance context based upon (1) the relationship between the insurer and the insured, (2) the reasonable foreseeability of harm to the insured, and (3) public policy concerns. *Id.* Moreover, the *Anderson* court's earlier decision had relied upon the general principles espoused in *Flint & Walling Manufacturing Co.* because there was an "absence of any decision even suggesting the possibility of a contrary view . . . ." *Anderson*, 340 F.2d at 409. However, as demonstrated above, there is now a body of caselaw which has expressed the contrary view— namely, that an insurance provider does not breach its duty of good faith and fair dealing when it only acts negligently. If the *Anderson* court had the benefit of *Hickman* and its progeny, it would almost certainly have reached a different result.

For the reasons stated above, based on the Indiana Supreme Court's analysis in *Hickman* and its progeny, the Seventh Circuit's reasoning in *Anderson* and *Certain Underwriters* is no longer authoritative. *See Reiser*, 380 F.3d at 1029. As such, based upon the procedural posture of

this case, the Court must follow the modern precedent established by the Indiana Supreme Court. *See Goetzke*, 280 F.3d at 773.

E.  **Johnson Fails to Distinguish *Hickman***

Trying to avoid dismissal of her tort claims based on negligence, Johnson argues that the rationale of *Hickman* is only applicable when a party is seeking punitive damages. Put another way, Johnson argues that the tort of negligence will support an award of compensatory damages, while bad faith is required to support an award of punitive damages. The Court is unpersuaded. First, Johnson does not cite any caselaw from the Indiana Supreme Court or the Indiana Court of Appeals which recognizes this purported distinction. Second, in the context of an insurer's duty of good faith and fair dealing with its insured, the Indiana Supreme Court has limited tort liability to bad faith, not mere negligence. *See Freidline*, 774 N.E.2d at 40; *Hickman*, 622 N.E.2d at 520. Accordingly, this argument fails.

Johnson also notes that *Hickman* "is a case where the insured was suing the insurance company to recover funds personally because the insurance company refused *to make a payment to the insured*." Resp. to Mot. to Dismiss, p. 5, ECF No. 28 (emphasis in original). Johnson elaborates that "[t]he present case is a case where Kimiel Horn, the insured, by his assignee, is suing his insurance company because they failed to settle within the policy limits with a 3rd party, Brittany Johnson, who now has an excess verdict against Kimiel Horn." *Id.* Johnson argues that this "difference is significant" because "the refusal to pay an insured's claim in a first party case, as in [*Hickman*], does not jeopardize or deplete the insured['s] existing assets. Conversely, when an insurance company negligently refused to pay a 3rd party claim, as in this case, the insured['s] existing assets are at risk." *Id.* However, Johnson does not cite any caselaw which recognizes this purported distinction between an insured and an assignee. Further, "a valid

assignment gives the assignee neither greater nor lesser rights than those held by the assignor. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor." *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993) (internal citations omitted). Finally, when assignees have pursued bad faith claims against an insurance provider, the Indiana Court of Appeals has held insureds and assignees to the same legal standards. *See Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 484–85 (Ind. Ct. App. 1998); *Economy Fire & Cas. Co. v. Collins*, 643 N.E.2d 382, 383–85 (Ind. Ct. App. 1994). Therefore, Johnson fails to demonstrate that an assignee is held to a different legal standard than an insured.

## CONCLUSION

Therefore, as a matter of Indiana tort law, an insurance provider does not breach its duty of good faith and fair dealing that it owes to its insured when it negligently fails to settle a claim within policy limits. As such, Travelers Indemnity Company's Motion to Dismiss Count II and to Strike Portions of Counts I and III [ECF No. 24] is GRANTED. Count II of Johnson's Counterclaim [ECF No. 19] is DISMISSED. Counts I and III of Johnson's Counterclaim [ECF No. 19] are DISMISSED to the extent that they are premised upon a theory of negligence. The Counterclaim remains pending as to the other claims in Counts I and III and as to the breach of contract claim in Count IV.

SO ORDERED on February 18, 2020.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT